UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| WILLIAM CAMPBELL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:05-cv-360 (VARLAN/SHIRLEY) |
| R. C. BABAOGLU, individually, and CAS CLARK, individually, | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil rights action is again before the Court on defendants' motion for summary judgment [Doc. 28]. The Court entered an order on April 2, 2007, granting in part and denying in part the instant motion [Docs. 56, 57] but later vacated that order with respect to plaintiff's claims of excessive force and unlawful arrest against defendants Babaoglu and Clark. [Doc. 63.] Oral argument on the remaining claims, including the issue of qualified immunity, was held on May 16, 2007.

The Court has carefully considered the pending motion, along with the parties' briefs, affidavits, other relevant pleadings, and oral arguments. For the reasons set forth herein, defendants' motion for summary judgment [Doc. 28] will be granted to the extent that all of plaintiff's remaining claims will be dismissed except for his claim of excessive force against Babaoglu arising from the events around Babaoglu's police cruiser. A jury will have to determine the merits of that claim because of genuine issues of material fact.

I.     **Relevant Facts**

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court expressly adopts and reincorporates the relevant facts established in the Court's April 2, 2007, Memorandum and Opinion. [Doc. 56.] The Court also finds the following additional facts to be relevant or worthy of emphasis.

The dispatcher stated the following when dispatching the officers:

> I have a 1083[1] at [plaintiff's home]. . . complainant states that she wants the husband removed from the house or to help her leave. She is advising that he is 1058[2], doesn't have any weapons, but will not let her and the daughter leave. She is going to stay on the phone until you get 97[3].

[Doc. 27, Exhibit 3.]

The record also establishes that the officers were at plaintiff's home somewhere between two and five minutes before the officers handcuffed him. [Doc. 36, Attachment 2 at p. 34.] During the struggle on and around the stairs inside plaintiff's home, Clark assisted Babaoglu in gaining control of plaintiff and in handcuffing plaintiff. [Doc. 29, Attachment 2 at p.3]. During that incident, plaintiff testified that the two officers "slam[med him] against the wall in the foyer," and "then slammed [him] down on the steps in the foyer." [Doc. 29,

---

[1] 1083 indicates a domestic call.

[2] 1058 indicates an intoxicated individual.

[3] 97, short for 1097, indicates the officers have arrived on the scene.

Attachment 4 at p.17]. Plaintiff clarified this statement by pointing out that he "went sideways and [the officers] fell on top of me." [*Id.*]. It must be emphasized that the steps were carpeted and plaintiff received only a minor injury to his nose and eye from that incident. [*Id.* at pp.18-19]. Plaintiff thought the officers were trying to hurt him. [Doc. 36, Attachment 2 at p.12]. Plaintiff admitted, however, that neither officer beat, punched, or otherwise attacked him at that time [Doc. 29, Attachment 4 at p.18].

Sometime after the incident on the stairs, Babaoglu escorted plaintiff to Babaoglu's vehicle. [Doc. 29, Attachment 4 at p.19]. On the way to the vehicle, plaintiff saw his wife standing outside and asked her something to the effect of "Did you really want this to happen?" [*Id.*]. According to plaintiff, Babaoglu then placed his right hand behind the back of plaintiff's head and slammed plaintiff's face into the back of the vehicle. [Doc. 36, Attachment 2 at p.13]. Babaoglu then escorted plaintiff around the side of the vehicle and again, according to plaintiff, slammed plaintiff's face against the vehicle, near the rear door on the driver's side. [Doc. 29, Attachment 4 at pp.19-20].

Additionally, while Babaoglu was escorting plaintiff to his cruiser, Mrs. Campbell asked Clark not to take plaintiff to jail because plaintiff had not assaulted her or their daughter. [Doc. 36, Attachment 2 at p.19]. In response, Clark told Mrs. Campbell that "[w]hen we come out, somebody's going to jail." [*Id.*]. Mrs. Campbell again told Babaoglu that she had not been assaulted. [*Id.* at p.22]. Finally, the Court observes that none of plaintiff's purported injuries resulted in his going to a doctor or an emergency room upon his release from jail; he did, however, put ice bags on his eyes when he went home. [Doc. 29, Attachment 4, at p.22].

## II.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As noted earlier, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III.    Analysis**

Plaintiff contends that defendants Babaoglu and Clark violated plaintiff's constitutional rights by using excessive force against plaintiff and by unlawfully arresting plaintiff without probable cause.

The defendants seek summary judgment in their favor on multiple grounds, primarily asserting that: (1) defendants Babaoglu and Clark had probable cause to arrest plaintiff; (2) defendants Babaoglu and Clark did not use excessive force when arresting plaintiff; and (3) even if defendants Babaoglu and Clark did violate plaintiff's civil rights, they are entitled to qualified immunity.

**A.    42 U.S.C. § 1983**

42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law.  It is well settled that § 1983 by its terms does not create any substantive rights but rather "merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)).  To prevail on his § 1983 claims, plaintiff "must establish that a person acting under color of state law deprived [Plaintiff] of a right secured by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)).  In other words, plaintiff must first show that he has suffered a violation of

a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005).

**B.    Defendants Babaoglu and Clark**

Plaintiff contends that defendants Babaoglu and Clark violated his constitutional rights by arresting him without probable cause and by using excessive force against him in effecting that arrest. Defendants Babaoglu and Clark counter that they had probable cause to arrest Plaintiff; that they did not use excessive force when arresting plaintiff; and that even if they did violate plaintiff's rights, they are entitled to qualified immunity. The Court will address each argument in turn.

**1.    Unlawful Arrest**

"It is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). "For a police officer to have probable cause for arrest, there must be facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id*. "Probable cause requires only the probability of criminal activity not some type of prima facie showing." *Id*. "The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances within an officer's knowledge at the time of the arrest." *Id*. The Court looks "at this question through the lens of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir.

2005)(citation omitted). In a § 1983 action, the existence of probable cause is a jury question, unless there is only one reasonable determination possible. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

Plaintiff was arrested for domestic assault in violation of Tenn. Code Ann. § 39-13-111. [Doc. 36, Attachment 2 at p. 37]. A person commits domestic assault when he intentionally, knowingly, or recklessly causes bodily injury to a family member; or intentionally or knowingly causes a family member to reasonably fear imminent bodily injury; or intentionally or knowingly causes physical contact with a family member and a reasonable person would regard the contact as extremely offensive or provocative. Tenn. Code Ann. §§ 39-13-101,-111.

In analyzing whether Babaoglu had probable cause to arrest plaintiff for domestic assault, the Court notes that "where law enforcement authorities are collaborating in an investigation . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1982). However, the knowledge of 911 operators and dispatchers may be imputed to investigating officers only when the operator or dispatcher is a police officer, or has received appropriate training to evaluate information for probable cause. *United States v. Colon*, 250 F.3d 130, 137-38 (2nd Cir. 2001). In the instant case, there is no evidence that the 911 operator who spoke with Mrs. Campbell was a police officer or had the appropriate training. Consequently, plaintiff contends that the extensive information obtained by the 911 operator from Mrs. Campbell should not be imputed to Babaoglu and Clark.

7

Nevertheless, even if this information is excluded from consideration, the Court now concludes, upon a more careful examination of this record, that ample evidence exists in this record to support a finding that Officer Babaoglu had probable cause to arrest plaintiff for domestic assault. Admittedly, the dispatcher provided only limited information to the officers, primarily relying on a dispatch code of 1083, indicating a domestic call, and 1058, indicating that the suspect might be intoxicated. Significantly, the dispatcher also informed the officers that Mrs. Campbell would stay on the phone until they arrived (using a truncated code for part of that message). This latter point is indeed critical to the Court's analysis and is one which was simply not considered in the earlier opinion.

Again, one means by which a person can commit domestic assault is by "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury ... ." Tenn. Code Ann. §§ 39-13-101, -111. Here, the officers were informed by the dispatcher that Mrs. Campbell would be at the residence when they arrived; yet, upon their arrival, Mrs. Campbell was nowhere to be found. In determining whether Babaoglu had probable cause to arrest plaintiff, the Court must focus only on those facts within Babaoglu's knowledge at the moment plaintiff was arrested. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Thus, Babaoglu knew that Mrs. Campbell was supposed to be at the residence, but she was not. The most logical inference, and perhaps the only logical inference, is that Mrs. Campbell left the residence because she feared "imminent bodily injury" from plaintiff, whom she reported to be intoxicated. Even more alarming is the fact that Mrs. Campbell obviously left without her daughter. And this fact must be considered in conjunction with

the 911 message that plaintiff was preventing both Mrs. Campbell and her daughter from leaving, implying to a reasonable officer that both wanted to leave. These facts would therefore suggest to a reasonable officer that Mrs. Campbell was so scared of plaintiff that she left even though she was unable to take her daughter with her. The Court also cannot ignore the fact that plaintiff was reported to be intoxicated (which the officers confirmed) and a reasonable officer would know that domestic confrontations can be exacerbated by alcohol. The Court now concludes as a matter of law that Babaoglu had probable cause to arrest plaintiff for domestic assault and, given the fact that the preferred response by an officer in such a situation in the State of Tennessee is arrest, *see* Tenn. Code Ann. § 36-3-619(a), Babaoglu had no choice but to take plaintiff into custody.

Moreover, the Court's conclusion is not altered by the fact that Mrs. Campbell twice requested that Babaoglu not arrest plaintiff or by Babaoglu's purported statement that "[w]hen we come out, somebody's going to jail," [Doc. 36, Attachment 2 at p.19], implying, as plaintiff suggests, that probable cause was predetermined before the officers' arrival. Tennessee's statute makes it clear that if an officer finds probable cause, the officer "shall not ... [b]ase [his] decision ... on [t]he consent or request of the victim ... ." Tenn. Code Ann. § 36-3-619(d)(2)(A). Thus, Mrs. Campbell's request not to arrest her husband carries no weight in this situation as it is statutorily precluded from consideration. Furthermore, given that the "preferred response ... is arrest," Tenn. Code Ann. § 36-3-319(a), the Court attaches very little significance to Babaoglu's statement to Mrs. Campbell under these circumstances because it was made *after* Babaoglu had arrested plaintiff. The Court's finding might indeed

9

be otherwise on this claim by plaintiff had Babaoglu made this pronouncement before he arrested plaintiff, but those facts are not before the Court.

Thus, summary judgment must be entered in favor of both defendants on plaintiff's claim for unlawful arrest because plaintiff's constitutional right to be free from an unlawful arrest was not violated.

**2.      Excessive Force**

The Fourth Amendment protects an individual's right to be free from a police officer's use of excessive force. *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). A claim of excessive force turns on whether the officer's actions were objectively reasonable. *Id*. Additionally, the Sixth Circuit has held that

> [t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Smith v. Freland*, 954 F.2d 343, 346-47 (6th Cir. 1992) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (citations omitted)).

The Supreme Court established three factors for courts to consider when evaluating an officer's use of force: (1) the severity of the crime at issue; (2) the immediate threat the suspect poses to the safety of the officer or others; and (3) the suspect's resistance to arrest

or his attempt to evade arrest by flight. *Graham* 490 U.S. at 396. These factors are not an exhaustive list, as the ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396. Additionally, the extent of a plaintiff's injury, though not crucial, is also considered in adjudicating excessive force claims. *Neague*, 258 F.3d at 508.

There are two separate incidents of alleged excessive force before the Court. The first incident involved both Babaoglu and Clark and occurred when the officers attempted to restrain plaintiff on and around the stairs inside plaintiff's home. The second incident involved only Babaoglu and occurred when Babaoglu allegedly slammed plaintiff's head into the patrol car on two occasions. The Court will address each of these incidents in turn.

With respect to the first incident, the defendants contend that they used a reasonable level of force in response to plaintiff's repeated non-compliance with their request that he keep his hands out of his pockets. The defendants argue that by repeatedly placing his hands in his pockets, the plaintiff presented a threat to the safety of the officers so that it was necessary to restrain him in order to alleviate that threat. Plaintiff acknowledges that he did repeatedly place his hands in his pockets and that it was reasonable for the defendants to want to gain control of the situation. However, plaintiff contends that the officers applied too much force in trying to gain that control.

Turning to the first factor enunciated in *Graham*, the severity of the crime at issue, the Court finds that this factor weighs in favor of the defendants. It is undisputed that the officers were responding to a domestic call and that such calls often present a heightened

level of danger to responding officers.  Here, the officers had to be extremely concerned because, contrary to what the dispatcher had informed them, Mrs. Campbell did not appear to be at home when they made their initial entry into the house.  In fact, it was not until after the officers had restrained plaintiff and after Alicia Campbell called her mother's cell phone expressing concern about her father that the officers had some assurance that Mrs. Campbell was not in the house.

The second *Graham* factor, the immediate threat the suspect poses to the safety of the officer or others, weighs heavily in defendants' favor.  Although the officers had been informed by their dispatcher that plaintiff was not armed, that information certainly did not dispel the notion that plaintiff could have been armed.  At most, such information would convey the fact that plaintiff was not visibly armed.  Here, plaintiff, by his own admissions, reached into his pants pockets three or four times, despite the police officers' clear instructions not to do so.  Given the undisputed fact that plaintiff continued to disregard the officers' orders, it was reasonable for these officers to establish control by turning plaintiff around in order to handcuff him to ensure their safety.  Moreover, given the fact that these three to four incidents of non-compliance occurred over the course of two to five minutes, the Court is of the opinion that the officers showed considerable restraint by not handcuffing the plaintiff much sooner.

The third *Graham* factor, the suspect's resistence to arrest or his attempt to evade arrest by flight, clearly cuts in favor of plaintiff.  There is no proof that he did either.

Additionally, in analyzing completely the incident inside plaintiff's house, it must be noted that the primary reason plaintiff was injured was that the officers attempted to place him under arrest in his foyer which, through no fault of either the officers or the plaintiff, happened to be near the stairwell. When the officers attempted to turn the plaintiff around in order to place him in handcuffs, the proof indicates that plaintiff fell - along with the officers - in this process. In the Court's view, there is nothing about this incident that rises to the level of excessive force. This conclusion is reinforced by the fact that plaintiff sustained only a minor injury to his head and his eye at that time and that he admitted that the officers did not beat, punch, or otherwise attack him at that time. In short, the Court finds that the police used no more force than necessary to effect plaintiff's arrest, and that the amount of force used by these officers to arrest plaintiff was objectively reasonable under the circumstances. Accordingly, summary judgment will be entered in defendants' favor on this claim.

With respect to the second incident of excessive force, the Court finds that the first factor weighs in favor of Babaoglu for the same reasons discussed with respect to the first incident. Nevertheless, this factor is more than offset by the fact that the second factor weighs strongly against any use of force because plaintiff was already handcuffed, had been patted down, and represented little, if any, threat to anyone's safety. The third factor also weighs against any use of force because plaintiff was not resisting, nor was he attempting to escape. Furthermore, viewing the facts in the light most favorable to the plaintiff, plaintiff's question to his wife of whether this was what she wanted to happen was not made in an

13

aggressive manner nor did it represent any resistance to the officers or a threat to anyone's safety. Accordingly, the Court finds that such force was not warranted under the circumstances, certainly not the type of force exhibited by slamming plaintiff's face into the police cruiser on two occasions. There is, however, no evidence that Clark was in any way involved in the second incident of excessive force. Accordingly, defendants' motion will be granted with respect to Clark as to this second incident of excessive force.

Finally, with respect to the second incident, the defendants claim that plaintiff has not identified an injury caused by the second incident, and thus he is barred from recovery. However, as the Court noted above, plaintiff indicated that his initial injuries were sustained in the first incident, implying that the wounds sustained to plaintiff's face and head in the first incident were exacerbated greatly by having his head twice slammed into the police cruiser. The Court finds that plaintiff has sufficiently identified an injury from the second incident to survive summary judgment with respect to his remaining claim against Babaoglu.

### 3. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known." *Thacker*, 328 F.3d at 259. The Sixth Circuit has held that qualified immunity involves a two-step inquiry:

> First the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation occurred. If

> the court finds a constitutional violation, it must then consider whether the violation involved "clearly established constitutional rights of which a reasonable person would have known."

*Id.* (citation omitted). "A right will be considered clearly established when the 'contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citation omitted). Additionally, "[i]mmunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights." *Id.* at 260 (citation omitted).

Defendants Babaoglu and Clark contend that they are entitled to qualified immunity with respect to plaintiff's unlawful arrest and excessive force claims. Plaintiff disagrees, claiming that the defendants violated clearly established constitutional rights, negating qualified immunity.

With respect to plaintiff's claim against Clark and Babaoglu based on unlawful arrest, this Court has already determined, for the reasons previously articulated, that plaintiff's allegations, when considered in the light most favorable to him, do not establish that a constitutional right was violated. Consequently, both defendants are shielded from civil liability due to qualified immunity on this basis.

With respect to plaintiff's claims of excessive force pertaining to the first incident, this Court has similarly concluded that plaintiff's rights were not violated at that time based on the present record. Again, both officers are shielded from civil liability due to qualified immunity.

The same cannot be said, however, with respect to the excessive force claim on the second incident. There, disputed questions of material fact exist as to whether Babaoglu slammed plaintiff's head into his police cruiser on a couple of occasions. The Sixth Circuit has held that "[w]here . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted." *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007) (citation omitted). If the jury believes plaintiff's version of the events, then the jury will no doubt conclude that Babaoglu employed excessive force while plaintiff was in his custody. If, on the other hand, the jury believes Babaoglu that he did not engage in such activity, then the jury's factual determination will support a defense of qualified immunity for Babaoglu. The Court finds that the question of qualified immunity must be left to the jury in this case.

**IV. Conclusion**

For the reasons set forth herein, the motion for summary judgment of defendants Babaoglu and Clark [Doc. 28] will be **GRANTED** only to the extent that all of plaintiff's § 1983 claims against both defendants will be dismissed except for plaintiff's claim against Babaoglu for excessive force near Babaoglu's police cruiser, which claim will proceed to trial.

Order accordingly.

                                            s/ Thomas A. Varlan
                                            UNITED STATES DISTRICT JUDGE